# THE CUMBERLAND GLASS MANUFACTURING COMPANY, A Corporation, *vs.* CHARLES DeWITT, Trading as Charles De Witt & Company.

*Causing breach of another's contract; action for damages. Competition in trade. Declaration: counts must not be double. Statute of Frauds: oral contract; unenforcible, but not void. Limitations: replication. Lost letters: parol evidence; foundation for—. Commissions to take testimony: exceptions.*

A declaration, whether based upon a contract or on tort, can not combine two causes of action in one count.　　p. 388

But a count in a declaration is not made double by immaterial matter, or by matter pleaded only as necessary inducement to another allegation, nor by matters, however numerous, provided their construction be one cause of action.　　p. 388

In an action for damages against a defendant for wrongful interference with the contract relations between the plaintiff and a third party, the fact that the plaintiff set out such contracts in his declaration does not make the action bad for duplicity; such contracts were not the cause of the action.

p. 388

Nor does the fact that one of the contracts was oral, and void under the Statute of Frauds, affect the sufficiency of the declaration.　　p. 388

## 382 CUMBERLAND GLASS MNF'G CO. *v.* DeWITT.

An oral contract is not void, merely because of its being unenforcible under the Statute of Frauds. p. 388

Under Article 57, section 14 of the Code of 1912, a replication that alleges that the plaintiff was kept in ignorance of his rights by the false, fraudulent and wrongful statements of the defendant (until within three years of the bringing of the suit), although he used ordinary diligence to discover them, will defeat the plea of limitations. p. 389

Under the rule of the Supreme Bench of Baltimore City, after the jury has been sworn and the examination of witnesses has begun, it is too late to file exceptions to the deposition of a witness, and exceptions to the execution and return of the commission will be considered as waived. p. 389

Where a letter or paper has been lost, sufficient foundation must be laid before parol evidence of its contents is admissible. p. 391

It is a violation of legal right to interfere with contractual relations recognized by law, if there is no sufficient justification for interference. p. 392

Malice in this form of action does not mean actual malice or ill-will, but consists in the intentional doing of a wrongful act without legal justification or excuse. p. 392

In a suit for damages against the defendant, for having caused a third party to break a contract with the plaintiff, no allegation that the plaintiff was able and willing to complete the contract is necessary. pp. 387-388

The right of one manufacturer to compete with others furnishes no justification for interfering in the contractual relations between third parties or for causing a breach of contract between them. p. 399

*Decided April 10th, 1913.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

The following are the prayers offered by the plaintiff and defendant, respectively, and the action of the trial Court upon each:

*Plaintiff First Prayer.*—The plaintiff prays the Court to instruct the jury, that if they find from the evidence, that in the month of February, 1906, the plaintiff had entered into contracts with the Mallard Distilling Company to supply it with 2,000 gross of glass flasks at $2.40 per gross, if they so find. And further find that the plaintiff was at all times able and ready to comply with said contracts, and furnish said flasks to the Mallard Distilling Company in accordance with said contracts, if they so find. And further find that before the time of delivery of said flasks by the plaintiff to the Mallard Distilling Company under said contracts, that the defendant or its agents obtained information of said contracts, if they so find, and the defendant with full knowledge of said contracts, dispatched one of its salesmen to the Mallard Distilling Company with instructions to said salesman to get the order of the Mallard Distilling Company for said flasks, if they so find, and did procure and induce the Mallard Distilling Company to break said contracts it had with the plaintiff for the said 2,000 gross of flasks, for the purpose of benefiting itself or injuring the plaintiff, if they so find; then the verdict of the jury should be for the plaintiff; provided the jury further find, that the plaintiff was kept in ignorance of the cause of action for which this suit is brought by the fraud of the defendant, if they so find, which fraud was not discovered and could not have been discovered by the plaintiff by usual and ordinary diligence, until the year 1909. (*Granted.*)

*Plaintiff's Second Prayer.*—The plaintiff prays the Court to instruct the jury that if they find for the plaintiff that the damages the plaintiff is entitled to recover is the difference between the cost to the plaintiff of the flasks embraced in the contracts, which the jury may find the contracts in question required the plaintiff to furnish the Mallard Distilling Company at the time of delivery of same, and the price of said

flasks embraced in the said contracts, which was stipulated in said contracts to be paid the plaintiff for the 2,000 gross of said flasks by the Mallard Distilling Company. (*Granted.*)

*Defendant's First Prayer.*—The jury are instructed that there is no evidence legally sufficient to entitle the plaintiff to recover in this cause and therefore the verdict of the jury · must be for the defendant. (*Refused.*)

*Defendant's Second Prayer.*—The jury are instructed that under the pleadings there is no evidence legally sufficient to entitle the plaintiff to recover and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Third Prayer.*—The jury are instructed: There is no evidence legally sufficient to establish the allegations contained in the plaintiff's amended replication to the defendant's second plea, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Fourth Prayer.*—The jury are instructed that under the pleadings there is no evidence legally sufficient to establish the allegations of the plaintiff's amended replication to the defendant's second plea and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Fifth Prayer.*—The jury are instructed that the burden of proof is upon the plaintiff to establish by a preponderance of proof satisfactory to them, the truth of the following allegations, alleged in the plaintiff's amended replication to the defendant's second plea, to wit: "The defendant, did fraudulently keep the plaintiff in ignorance of said cause of action by fraudulently, deceitfully and dishonestly denying that it had in any way been guilty of any of the acts alleged in the amended *narr.*" "and the said facts did not come to the knowledge of the plaintiff" until less than three years before the institution of this suit, though "he had used ordinary diligence to discover the same," and if the testimony in this case does not satisfy the jury as to

the truth of the said allegations the verdict must be for the defendant. (*Granted.*)

*Defendant's Sixth Prayer.*—The jury are instructed that under the pleadings if they find that the plaintiff failed to bring this suit within three years from the time his right of action accrued and shall further find that his failure to bring said suit was not due to any dishonest or fraudulent concealment by the defendant of the existence of such right of action then their verdict must be for the defendant. (*Granted.*)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*H. H. Dinneen* and *Arthur L. Jackson* (with whom was *Paul M. Burnett* on the brief), for the appellant.

*Thomas G. Hayes* (with whom was *Lewis W. Lake* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The amended declaration upon which this case was tried alleged that since the year 1886 the plaintiff had been a dealer in imported and domestic bottles, demijohns, etc.; that the defendant, the Cumberland Glass Manufacturing Company, a foreign corporation, was engaged in the manufacture of glass bottles, window glass, etc., and conducted its factory at Bridgton, in the State of New Jersey; that it complied with the requirements of the laws of this State which permit foreign corporations to transact business here, and that it was in fact doing business here. It further

alleged that on February 8th, 1906, the plaintiff entered into a written contract with the Mallard Distilling Company of New York to supply them with one thousand gross of half-pint lettered gin flasks, eight ounce capacity, at the price of two dollars and forty cents per gross, and that on or about the same date did verbally enter into an additional contract with said company for another one thousand gross of bottles at two dollars and forty cents per gross, which bottles were to be made identical in every respect with those specified in the written contract. It then alleged "that the Cumberland Glass Manufacturing Company did, with knowledge of the existing contract, on or about the 15th day of February, 1906, by and through the medium of their agents, visit the said Mallard Distilling Company, and maliciously and without just cause, with the intent to injure the plaintiff and to derive a benefit for itself, cause, induce and procure the said Mallard Distilling Company to rescind, break and violate their contracts" with the plaintiff. It further alleged that at the time the Mallard Distilling Company broke its contracts the plaintiff charged the defendant with having interfered with and caused the Mallard Company to break the contracts; that the defendant denied that it had in any way interfered with the contracts, or had procured, or caused the same to be broken; that the plaintiff was unable to procure sufficient proof against the defendant of its violation of duty, and that the proof of the facts was not known or exhibited to him until the latter part of the year 1909, but was fraudulently concealed and withheld by the defendant.

The defendant interposed three pleas—first, that it did not commit the wrong alleged; secondly, limitations; thirdly, *res adjudicata,* based upon certain proceedings had in the United States District Court for Maryland, and particularly set out in the pleas. The plaintiff joined issue upon the first plea, and demurred to the second and third. The demurrer was overruled as to the second plea—limi-

tations—and sustained as to the third plea—*res adjudicata.* The plaintiff replied to the plea of limitations, and, upon demurrer, the replication was held bad. He then filed an amended replication in these words: "That the said cause of action did accrue within three years prior to the filing of the said suit, inasmuch as the said Cumberland Glass Manufacturing Company, the defendant in the said cause, did fraudulently keep the plaintiff in ignorance of the said cause of action by fraudulently, deceitfully and dishonestly denying that it had in any way been guilty of any of the acts alleged in the said cause of action as set out in the amended declaration of the plaintiff, although the plaintiff did charge the defendant with the same upon the first of March, in the year 1906; and the said facts did not come to the knowledge of the said plaintiff until the latter part of the year 1909, although he had used ordinary diligence to discover the same." The defendant demurred to this replication and its demurrer being overruled, filed a rejoinder upon which issue was joined. The trial resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

The first question presented for consideration is the legal sufficiency of the declaration. This question is raised by the plaintiff's demurrer to the second and third pleas to the amended *narr.* and by the defendant's second prayer, which refers to the pleadings, presented at the close of the case. The declaration is said to be bad for three reasons—first, because it contains no allegation that the plaintiff was able and willing to carry out his contracts with the Mallard Distilling Company; secondly, for duplicity, since it contains two complete, separate and independent causes of action in one count; thirdly, because one of the contracts was unenforceable under the Statute of Frauds, and the declaration does not allege that but for the defendant's interference the Mallard Company would have carried out this contract, and would not have relied upon the defense of the statute.

The first' and second grounds of objection rest upon the doctrine declared in *Dimmick* v. *Hendley,* 117 Md. 458; *Milske* v. *Steiner Mantel Company,* 103 Md. 235, and other cases. But those cases have no application to cases of this kind. The cause of action set out in the declaration is the wrongful interference by the defendant with the contract relations between the plaintiff and the Mallard Distilling Company. The cause of action is the tortious act of the defendant in procuring or causing the breach of the plaintiff's contracts with the Mallard Company. The suit is not upon the contracts, nor does it charge the defendant with several distinct torts. It charges one single tort resulting in damages to the plaintiff. It is well settled that a declaration, whether it is based upon a contract or upon tort, can not combine in one count two distinct causes of action. But we do not regard the declaration in this case as open to this objection., *Mr. Poe,* in his first volume on *Pleading and Practice,* section 734, says: "Much discussion will be found in the books in regard to what will and what will not make a pleading double. The best analysis of the adjudications, and the principles deducible from them, is given by *Mr. Stephen.* He shows that a pleading, under the old system, was not made double by immaterial matter, nor by matter pleaded only as necessary inducement to another allegation, nor by matters, however numerous, provided they constituted but one cause of action or one defense." It was necessary to the plaintiff's case that he should set out in the declaration his contracts with the Mallard Company, but these contracts were not his cause of action, and their statement in the declaration did not make it bad upon the principles stated by *Mr. Poe.* Nor does the fact that one of these contracts was oral affect the sufficiency of the *narr.* The contract is not void, although it might not have been enforcible against the Mallard Company. But this circumstance can not avail the defendant. This was decided in *Knickerbocker Ice Company* v. *Gardiner Co.,* 107 Md. 556. We are of opinion that the declaration was sufficient.

We also hold that the amended replication to the plea of limitations was good. It is provided by Article 57, section 14, Code of 1912, that in "all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual and ordinary diligence might have been known or discovered." The language of the replication sets out facts which avoid the plea. If the defendant did in 1906 wrongfully cause the Mallard Company to break its contracts, and the plaintiff was kept in ignorance of his rights by the false statements of the defendant, as the replication alleges, there would seem to be no doubt that he is entitled to rely upon the statute to defeat the plea of limitations. This brings us to a consideration of the exceptions. The first exception presents no question for decision. Rule 25 of the Superior Court of Baltimore City, in which this case was tried, provides that: "Exceptions to the execution and return of a commission shall be made before the jury is sworn in the case, otherwise it shall be considered as waived." The record shows that the counsel for the defendant stated to the Court before the jury was sworn that he wanted to give notice to the plaintiff that the defendant would "at the proper time object to the depositions of a certain witness, Frist, which had been taken in the case;" but he filed no exceptions until after the jury was sworn and after the plaintiff had been examined, and, therefore, under the rule quoted exceptions as to the execution and return of the commission were waived. In the second exception it appears that the plaintiff's counsel offered to show the counsel for the defendant a letter written by the plaintiff to the Mallard Distilling Company. The defendant's counsel objected, but the letter was not offered in evidence. It is difficult to see how the defendant could have been injured by this ruling. The third and fourth exceptions may be considered together. On the 8th of February, 1906, the

plaintiff sent to the Mallard Distilling Company the following letter:

"February 8th, 1906

Mallard Distilling Co.,
    New York.

Gentlemen:

We have entered your order for (1000) one thousand gross half-pint lettered gin flasks, eight ounce weight and eight ounce capacity, same as before.

We are to make these flasks at once, and you are to take two (2) cars not later than July 31st, 1906, and you are to take two remaining cars not later than July 31st, 1907.

Price to be $2.40 per gross f. o. b. New York, packed in crates of one gross each. Terms 30 days or 2% for cash in ten days. Guaranteed first-class flint ware. Breakage not to exceed 2%.

Yours truly,
                    CHAS. DeWITT & Co.

Accepted:
                    Mallard Distilling Co.   (rubber-stamped)
                    Chas. M. Kohn,   (written in ink)
                        Sec'y. & Treas.   (rubber stamped)"

It is shown that Charles M. Kohn was the secretary, treasurer and manager of the Mallard Distilling Company. The third exception was taken to the introduction in evidence of an admission of Mr. Kohn that he had signed the acceptance endorsed on the above letter, and the fourth exception was to the admission of the contract in evidence. This contract was alleged in the *narr.*, and is one of the contracts which it is alleged was caused to be broken by the Mallard Company by reason of the unlawful interference of the defendant, and the plaintiff had a right to prove the existence of this contract. There was no error in these rulings. What we have just said also applies to the fifth exception. There is nothing to show what testimony was objected to, or what questions the Court passed upon in the sixth and seventh exceptions, and, therefore, we can not review its action. The eighth excep-

tion relates to the refusal of the Court to strike out an answer of the plaintiff. Part of this answer was proper, bearing upon the issue of limitations, and the motion being to strike out the whole answer, it was properly overruled. There was no error in the ruling on the ninth exception. This exception was taken to the ruling of the Court in permitting oral proof of the contents of a letter, which had been destroyed, written by John F. Perry, the sales-manager of the defendant company, to Robert B. Frist, one of its salesmen. This letter will presently be referred to. Sufficient foundation was laid for the admission of oral testimony to prove its contents. The Court in the tenth exception refused to allow the plaintiff to answer a question as to whether he had made any defense to a petition filed against him in bankruptcy. This was a wholly immaterial inquiry. But subsequently the proceedings in bankruptcy were put in evidence, and must have shown what, if any defense, the plaintiff made. There was no error in the 11th exception. The exception was made too late under the rules of Court above referred to. The twelfth to the fortieth exceptions inclusive all relate to certain questions propounded to Robert B. Frist and his answers thereto appearing in his deposition taken under a commission. Without discussing these exceptions separately, our conclusion is that we find no reversible error in any of the rulings.

At the conclusion of the whole case the plaintiff submitted two prayers which were granted. The Court also granted the defendant's fifth and sixth prayers. The *Reporter* will set out the granted prayers in the report of the case. The defendant's first and second prayers ask the Court to direct a verdict for the defendant: first, because the plaintiff had offered no legally sufficient proof to entitle him to recover; and secondly, because under the pleadings there was no evidence in the case legally sufficient to entitle him to recover; and the defendant's third and fourth prayers ask that the case be withdrawn from the jury; first, because, there was no legally sufficient evidence to support the plaintiff's replica-

tion to the defendant's plea of limitation; and secondly, because under the pleadings there was no legally sufficient evidence to establish the allegations of that replication.

Since the decisions of this Court in *Knickerbocker Ice Company* v. *Gardiner Dairy Co.*, 107 Md. 556, and the *Sumwalt Ice Co.* v. *The Knickerbocker Ice Co.*, 114 Md. 403, there ought not to be any difficulty about the general principles of law in this State applicable to this class of actions. In those cases this Court adopted the conclusion reached by the majority of the judges of *the Queen's Bench in Lumley* v. *Gye*, 2 El. & Bl. 216. The doctrine of that case has been followed in England in *Bowen* v. *Hall*, 6 Q. B. D. 333; *Read* v. *Friendly Society, etc.*, 2 K. B. (1902) 88; *South Wales Miners' Federation et al.* v. *Glamorgan Coal Co. Limited et al. Appeal Cases* (1905), 239.

It has been affirmed by the Supreme Court of the United States in *Angle* v. *Chicago, etc., R. R. Co.*, 151 U. S. 1, and is followed by many of the State Courts. That decision, as stated by Lord Macnaghten in *Quinn* v. *Leathem Appeal Cases* (1901) 495, established this general proposition, "that it is a violation of legal right to interfere with contractual relations recognized by law if there is no sufficient justification for the interference."

Malice in this form of action does not mean actual malice, or ill will, but consists in the intentional doing of a wrongful act without legal justification or excuse. In *South Wales Miners' Federation* v. *Glamorgan Coal Company, supra*, Lord Lindley said: "Bearing in mind that malice may or may not be used to denote ill will, and that in legal language presumptive or implied malice is distinguishable from express malice, it conduces to clearness in discussing such cases as these to drop the word "malice" altogether, and to substitute for it the meaning which is really intended to be conveyed by it. Its use may be necessary in drawing indictments, but when all that is meant by malice is an intention to commit an unlawful act without reference to spite or ill

will, it is better to drop the word malice and so avoid all mis-
understanding."    The same principle· was announced in
*Knickerbocker Ice Company Case, supra,* in which JUDGE
BOYD said: "Although many of the cases speak of the act as
being maliciously done, it would seem to be clear that *express*
malice is not necessary if the act is wrongful and unjustifi-
able."

Turning now to an examination of the facts appearing in
the record, we find evidence tending to establish the contracts
between the plaintiff and the Mallard Distilling Company.
Did the defendant know of these contracts, and did it inten-
tionally cause the Mallard Company to break them? These
are questions of fact.  It is not the province of this Court
to decide these questions.   We are merely to determine
whether the plaintiff offered evidence from which the jury
might have reasonably found that the defendant had this
knowledge and that it intentionally procured their cancella-
tion.  In our opinion the evidence of the plaintiff and that
of Robert B. Frist and Charles M. Kohn was abundantly suf-
ficient to have carried the case to the jury upon these ques-
tions.   This evidence is uncontradicted, and tends to show
that the defendant acquired knowledge of these contracts
through Arthur MacLellan, its agent in Baltimore, and that
it intentionally deprived the plaintiff of the fruits of the
contracts by offering the Mallard Company lower prices on
the flasks.   This was done by John F. Perry acting through
the agency of Robert B. Frist one of the defendant's sales-
men.   The flask which the defendant was to furnish under
his contracts was a special proprietary mold, half pint bottle,
with this lettering: "Mallard Distilling Company, Balti-
more and New York, patent applied for".   On the eighth or
ninth of February, 1906, Arthur MacLellan, the local agent
of the defendant in Baltimore, came into the plaintiff's
office.   One of these bottles was laying upon the desk in the
office.   MacLellan picked up the flask, and was told by the
plaintiff of his contract for two thousand gross.   MacLellan

asked that the defendant might be permitted to submit a price, and requested the plaintiff to mail the flask to the defendant, and that he would write, saying that he could get a good price. The plaintiff did mail the flask to the defendant and it was received by it, and four days after the flask had been sent the Mallard Company cancelled the contract.

John F. Perry wrote to Frist as follows: "DeWitt, Baltimore, mails us a Mallard Distilling Company flask. Go and take the business away from them. You have the price." The flask which the plaintiff had mailed was delivered by Perry to Frist at Bridgton on February 10th, 1906, with directions from Perry to get the order from the Mallard Company, "and if possible to procure it, using a lower price than he thought DeWitt would be able to quote and make a profit." When the flask was delivered to Frist by Perry the name of the Mallard Company, which had been blown into the bottle, was concealed by a paper label pasted upon it which stated that the bottle had been filled with gin at sometime by the Mallard Company. Unless, therefore, the defendant had a legal excuse or justification for its act, the plaintiff was entitled to recover; provided, the evidence supported the allegation of the replication to the plea of limitations.

Now, what is the justification upon which the defendant relies to exonerate itself from responsibility? It is the right of competition in trade. It asserts this proposition, that the right of competition justifies a defendant in knowingly and deliberately, for its own benefit or advantage, inducing the breach of a contract by offering lower prices. No case has been cited to support this contention. Counsel for appellant have cited a number of cases bearing upon the right of competition in trade or business. But this is altogether different from the right which one has to be protected from interference with his rights under existing contracts. There is a wide distinction between the two classes of cases, and they are governed by distinct rules of law. The principles applicable to the first class are stated in *Klingle's Pharmacy*

v. *Sharp & Dohme,* 104 Md. 218, and in *Mogul Steamship Company* v. *McGregor, Gow & Co., Appeal Cases* (1892) 25, and other cases cited on appellant's brief.

In the last cited case it was said "that the procuring of people to break their contracts" is an unlawful act. In his opinion in that case Lord Morris said: "All the acts done, and the means used, by the defendant were acts of competition for trade. There was nothing in the defendants acts to disturb any existing contract of the plaintiffs, or to induce any one to break such." In discussing the right of competition in *Walker* v. *Cronin,* 107 Mass. 555, the Court said "everyone has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is *damnum absque injuria,* unless some superior right by contract or otherwise is interfered with."

We, therefore, hold that the right to compete furnished no justification to the defendant in this case.

We also hold that the evidence was legally sufficient to be considered by the jury on the issue raised upon the plea of limitation. The plaintiff suspected that the contracts with the Mallard Company had been cancelled through the act of the defendant, and it made an effort to ascertain that fact. The Mallard Company declined to give him any information, and John F. Perry deliberately misled him, and except for the information derived from Frist in the fall of 1909 it is doubtful if he ever would have been able to connect the defendant with the violation of his contracts. The defendant got the full benefit under the general issue plea of all the facts set out in its third plea, and no harm resulted to it in sustaining the demurrer to that plea.

The judgment will be affirmed.

> *Judgment affirmed, the appellant to pay*
> *the costs above and below.*