### Everett C. Mitchell et al v. Carl J. Aldrich et al

[163 A.2d 833]

May Term, 1960

Present: **Holden, Shangraw and Smith, JJ. and Divoll and Morrison, Supr. JJ.**

Opinion Filed September 6, 1960

*Hanford G. Davis* for the plaintiffs.

*Wayne C. Bosworth* for defendant Aldrich.

*Lee E. Emerson* for defendant Drew.

**Holden, J.** The plaintiffs seek recovery for wrongful interference with contract relations. They claim the defendants deprived them of

an advantageous agreement to purchase a herd of dairy cattle. The trial court withheld the case from the jury by directing a verdict of no liability. The plaintiffs appeal from the judgment for the defendants that was entered on this ruling.

There was some conflict in the testimony given at the trial. Resolving this conflict in favor of the claim as we are required from the error assigned, this is the plaintiff's version of the controversy.

Prior to the sale of the cattle in question, the seller, William Comette had procured several loans from the Chittenden Trust Company. His obligations were secured by mortgages on real and personal property. The chattel mortgage included farm machinery and the dairy herd, consisting of 102 cows. In August 1947 Comette decided to sell his entire herd and to this end obtained general permission from the mortgagee. He then called the plaintiff Mitchell, informed him of his intention to sell and sought to interest Mitchell in the purchase. The following morning, Mitchell and his associate, the plaintiff Albee, visited the Comette farm and inspected the cattle. After looking over the cattle, the plaintiffs made an offer to purchase the herd for $7800. This offer was accepted by Comette. The terms of the sale provided for the payment of $100 at that time, $900 to be paid the following day and the balance of the purchase price became due on the removal of the cattle from Comette's barn, in no event later than ten days hence. Comette informed the plaintiffs of the mortgage lien of the Chittenden Trust Company and it was understood by the buyers that approval of the bank was necessary to complete the transaction. Upon the payment of the $100, a written memorandum of the agreement was signed by Comette which set forth the terms of the sale and specified the sale was subject to the approval of the bank.

Comette communicated with his mortgagee on the same day and was advised by the bank that a Mr. Aldrich would call at his farm. The bank had made a prior arrangement with Aldrich to appraise the cattle which Comette sought to sell. It appeared that the Chittenden Trust Company had from time to time called upon Aldrich to make such appraisals. Aldrich was not in the employ of the bank and received no compensation for making the valuations. After Comette's telephone message on August 15, the bank requested Aldrich to make his appraisal right away.

The bank's loan officer, responsible for servicing the Comette obligations, was called as a witness for the defendant Aldrich and gave this testimony concerning Aldrich's authority.

A. We asked Mr. Aldrich to make an appraisal of the cattle as to determine the value of them.

Q. And did you ask him to do anything whatsoever in regard to the sale of them?

A. Other than if he wanted to buy them he had the privilege.

Q. And did you ask him, did you say anything to him in regard to interesting other people in regard to it?

A. No sir.

After telephoning the bank, Comette informed the plaintiffs that Aldrich had been sent to look at the cows. The plaintiffs went to Aldrich and informed him of their agreement to purchase the Comette cattle. Aldrich disclaimed any interest in the property but added that he would fulfill an appointment with Drew to look at the cattle.

When Aldrich and Drew arrived at the Comette farm, Comette informed them of his undertaking with the plaintiffs, and that he had received $100 in part payment of the price agreed upon. Aldrich replied by saying the plaintiff Mitchell was a "tough fellow to do business with and that I (Comette) probably would never get my money after the cows left the barn." Aldrich went on to say that it would be impossible for Mitchell to get the bank's approval of his purchase. Drew and Aldrich then offered Comette $8100 for the herd and Aldrich stated there would be no doubt of the bank's approval of that offer. Comette's testimony continued to the effect that he relied on Aldrich's statements for he believed him to be a representative of the bank.

The sale to Drew was completed with the approval of the mortgagee. Drew derived a net profit from the resale of the cattle. Aldrich received compensation from Drew for assistance in getting the cattle ready for auction.

Except for special justification, the law has long recognized liability against one who intentionally intrudes to disrupt an existing contract relation. *Lumley* v. *Gye,* 1853, 2 E&B 216, 118 Eng. Rep. 749, 754; *Angle, Admx.* v. *Chicago, St. Paul, Minneapolis & Omaha*

*Railway Co.,* 151 U.S. 1, 14 S. Ct. 240, 38 L.Ed. 55, 62; *Beekman* v. *Marsters,* 195 Mass. 205, 80 N.E. 817, 819; *Campbell* v. *Gates,* 236 N.Y. 457, 141 N.E. 914, 915; Restatement, Torts §766; Pollock, The Law of Torts, 13th ed., p. 340; Street, Foundations of Legal Liability, p. 343; Carpenter, Interference with Contract Relations, 41 Harv. L. R. 728. The interest protected is the right of the individual to security in his business relations. He has a right to preserve the undertakings of persons with whom he has commercial dealings. *R & W Hat Shop, Inc.* v. *Sculley,* 98 Conn. 1, 118 A. 55, 29 A.L.R. 551, 558; *Barry* v. *Donovan,* 188 Mass. 353, 74 N.E. 603, 604, cert. dismissed, 199 U.S. 612, 26 S. Ct. 745, 50 L.Ed. 333; *Louis Kamm, Inc.* v. *Flink,* 113 N.J.L. 582, 175 A. 62, 66, 99 A.L.R. 1; 1 Harper and James, The Law of Torts, §6.5, p. 491. See also annotations 84 A.L.R. 46; 26 A.L.R.2d 1240.

The remedy afforded is not restricted to definite and enforceable contracts. Protection is appropriate against unjustified interference with reasonable expectancies of profit though the contract is terminable at will or unenforceable against the promisor in an adversary proceeding. The added element of a definite contract may be the basis for greater protection but it is not an essential requirement. *Cumberland Glass Mfg. Co., Inc.* v. *DeWitt,* 120 Md. 381, 87 A. 927, 930, aff'd 237 U.S. 447, 35 S. Ct. 636, 59 L.Ed. 1042; *Aalfo Co., Inc.* v. *Kenney,* 105 N.J.L. 345, 144 A. 715, 716; *Schecter* v. *Friedman,* 141 N.J. Eq. 318, 57 A.2d 251, 254; Restatement, Torts, §66, comment b.

The promise of the seller, Comette, was a valid undertaking, made with proper reference to the security interest of his mortgagee in accordance with the requirement of 9 V.S.A. §1763. The approval of the mortgagee, although not a certainty, was anticipated and expected. Save for the consent of the bank, the plaintiffs had a rightful interest in having the seller's promise performed free from other outside interference which might make performance more difficult or impossible.

The purpose of the consent requirement was solely for the protection of the mortgagee. Clearly, if the loan was adequately safeguarded, the mortgagor was not at liberty to abrogate his promise to the buyer in order to gain a higher price. The seller's promise re-

mained in force until such time as it was disapproved for reasons connected with the impairment of the mortgagee's interest.

There is substantial evidence to support the conclusion that the defendants intruded upon this relationship to intercept the prospective gain for themselves by procuring a breach of the seller's undertaking to the plaintiffs before the approval of the bank could be invoked. In any event, the seller broke away from his original undertaking with the plaintiffs and the evidence permitted the jury to conclude that Comette's promise to the plaintiffs would have been fulfilled according to its terms had it not been for the participation of either or both of the defendants. It was for the jury to say whether the plaintiff's loss of the Comette agreement was caused by the defendants. *Doremus* v. *Hennessy,* 176 Ill. 608, 52 N.E. 924, 926, 54 N.E. 524; 30 Am. Jur. Interference §58, p. 94.

The next question is whether the interference was justified as a matter of law. If so the verdict directed by the court may be vindicated.

■■ Justification for interference in the business relations of another is an affirmative defense, and the intruder has the burden of proving his privilege to intervene. *Owen* v. *Williams,* 322 Mass. 356, 77 N.E.2d 318, 9 A.L.R.2d 223, 226; *Advance Music Corp.* v. *American Tobacco Co.,* 296 N.Y. 79, 70 N.E.2d 401, 403; 86 C.J.S. Torts §57, p. 981; 30 Am. Jur. Interference, §57, p. 93. Whether an occasion exists which justifies the invasion of another's contract or business relations by the defendant is generally a question for the jury. *Meason* v. *Ralston Purina Co.,* 56 Ariz. 291, 107 P.2d 224, 228; *Berry* v. *Donovan,* 188 Mass. 353, 74 N.E. 603, 605, cert. denied 199 U.S. 612, 26 S. Ct. 745, 50 L.Ed. 333; 30 Am. Jur. Interference, §58, p. 94.

■ The law has crystallized relatively few concrete rules to determine the existence or want of privilege. All the circumstances must be analyzed and considered with reference to the type of relation disrupted, the means employed and the purpose of the actor's interference. Restatement, Torts, §767; *Louis Kamm, Inc.* v. *Flink, supra,* 113 N.J.L. 582, 175 A. 62, 99 A.L.R. at 8.

■ It is only when the actor participated in the exercise of an absolute right, equal or superior to the right invaded that interference

can be justified as a matter of law, and the issue withheld from the jury. Such a situation was found to prevail in *Raycroft* v. *Tayntor,* 68 Vt. 219, 222-223, 35 A. 53, 33 L.R.A. 53, 54 Am. St. Rep. 882. The defendant threatened to revoke a license to quarry, granted to the plaintiff's employer, unless the employer terminated the plaintiff's employment. The decision points out that the defendant was clothed with all the right and power of the owner of the quarry,—that it was the defendant's right and privilege to determine who might remain at work there. The Court concluded that the defendant was acting in response to a right, equal or superior to that of the plaintiff and there could be no liability.

 But there is no legal right to knowingly invade the contract relation of others solely to promote the intervenor's financial interest. And an outsider, with knowledge of a sales agreement, who prevents performance by offering a better price, may be held liable to the promisee who has suffered from the intervention. *Bitterman* v. *Louisville & Nashville Railroad Company,* 207 U.S. 205, 28 S. Ct. 91, 52 L.Ed. 171, 182; *Louis Schlesinger Co.* v. *Rice,* 4 N.J. 169, 72 A.2d 197, 203; *Cumberland Glass Mfg. Co., Inc.* v. *DeWitt, supra,* 120 Md. 381, 87 A. at 932; 30 Am. Jur. Interference, §35, p. 81; see also Carpenter, Interference with Contract Relations, 41 Harv. L. R. at 747. Thus the financial gain derived by the defendants from knowingly ousting the plaintiffs from their bargain with Comette, in itself, affords no legal excuse.

The defendants seek refuge in the authority conferred on the Chittenden Trust Company, by statute and contract, to disapprove the plaintiffs' trade as justification for their interdiction of Comette's engagement. The authority which Aldrich derived from the bank was restricted to appraising the Comette herd. There is nothing to indicate the privilege to veto the proposed sale of the mortgaged property was delegated to Aldrich. Herein lies the principal distinction between the facts of this appeal and those that controlled in *Raycroft* v. *Tayntor, supra,* at 223. In the Raycroft case the privilege of interference was exercised by a defendant who was clothed with all the right and power of one legally justified to intrude.

It is the defendants' position that the authority to interfere, although originally wanting, was supplied by ratification when the bank

approved the sale to the defendant Drew. Whether the bank knowingly ratified the excessive acts of its appraiser in this instance is open to serious question. We are not required to settle that issue to dispose of this appeal. Even if it could be said that Aldrich acted with all the authority of the bank, the privilege of the bank to disrupt the agreement was not absolute, on the facts presented.

The mortgage from Comette to the bank transferred ownership of the mortgaged property to the mortgagee. However, ownership of the mortgagee in the encumbered property is subject to the mortgagor's equity and right to redeem. *Mason* v. *Sault,* 93 Vt. 412, 415, 108 A. 267, 18 A.L.R. 1426; *Mower* v. *McCarthy,* 79 Vt. 142, 148, 64 A. 578, 7 L.R.A., N.S. 418, 118 Am. St. Rep. 942; *Blodgett* v. *Blodgett,* 48 Vt. 32, 33. And here the mortgagee had fully recognized Comette's right to redeem and had granted him general permission to offer the mortgaged property for sale. Comette's undertaking with the plaintiffs was consistent with the mortgagee's knowledge and permission, and subject to the mortgagee's final approval.

The mortgagee's right to defeat the proposed agreement to sell was limited by the nature of security required to protect the mortgage loan. In those instances where it might conclude by fair and honest judgment that the proposed sale would dissipate or jeopardize the security of the loan, a clear right to forbid the sale would exist. But where the integrity of the seller's obligation would not be affected, the mortgagee has no absolute right to prohibit the sale or disrupt the bargain. *Meason* v. *Ralston Purina Co., supra,* 56 Ariz. 291, 107 P.2d at 228.

The security available to the Chittenden Trust Company to protect Comette's obligations was not limited to the dairy herd. The bank had a mortgage on other personal property, including farm machinery and a real estate mortgage as well. The extent of Comette's indebtedness to the Chittenden Trust Company on the date of the proposed sale was not stated in the evidence. It does appear that the chattel mortgage was satisfied and discharged in 1957 by the payment of $6,692. Whether the proposed sale of the cattle to the plaintiffs at the price of $7,800 would imperil the mortgagee's security in such a way to justify the interference and disapproval by the bank's proper

representative framed an issue of fact in this controversy. *Meason* v. *Ralston Purina Co., supra,* 56 Ariz. 291, 107 P.2d at 228.

It was for the jury to say whether the defendants' interference had the consequence of destroying Comette's promise to the plaintiffs. If the jury reached an affirmative answer to this question, they were required to determine whether the defendants established that the occasion of their interference was authorized by the bank and justified by a present danger to the bank's mortgage security.

The presence of these issues of fact required that the cause be submitted to the jury for decision. It was error to grant the defendant's motion for verdict.

By the same token and for equivalent considerations the plaintiffs' motion for verdict was properly denied. The plaintiffs' assignment of error on this point is without merit.

*Judgment reversed and cause remanded.*