Walter J. HARE and Elizabeth F. Hare

v.

FAMILY PUBLICATIONS SERVICE, INC., a Delaware corporation, et al.

Civ. No. 71–152–M.

United States District Court, D. Maryland.

Dec. 3, 1971.

Sheldon H. Braiterman and Michael J. Milton, Baltimore, Md., for plaintiffs.

H. Vernon Eney and Lee M. Miller, Baltimore, Md., for all defendants except Kingston.

Benjamin C. Howard and L. Keith Simmer, Baltimore, Md., for defendant Robert G. Kingston.

JAMES R. MILLER, Jr., District Judge.

*Memorandum Opinion and Order*

In a third amended complaint Walter J. Hare and Elizabeth F. Hare have sued Family Publications Service, Inc. (FPS), Time, Incorporated (Time), William J. Conway (Conway), John W. Watters (Watters), Samuel B. Ananian (Anani-

an), and Robert G. Kingston (Kingston) in one count on what appear to be at least three causes of action. The first apparent cause of action alleged is one against FPS for breach of a contract between FPS and Walter J. Hare and his wife, Elizabeth. The second is one against Time, FPS, and the individual defendants on the ground that they conspired to induce the breach of said contract. The third is one against Time and the individual defendants on the ground that they did intentionally induce the breach by FPS of said contract.

All of the individual defendants were served with process outside of the State of Maryland. The two corporate defendants were served with substituted process. All of the defendants except FPS have filed motions to dismiss under Rule 12(b) F.R.Civ.P., raising, among other things, the jurisdiction of this court over them. Against this background the court is called upon to rule on the motion of the plaintiffs to compel answers to a number of interrogatories directed by the plaintiffs to the defendants under an order in which the court granted the plaintiffs leave to file interrogatories directed solely to factual issues of jurisdiction raised by the motions to dismiss.

The objections by the defendants to the plaintiffs' interrogatories fall generally within four categories, as follows:

(1) Lack of relevancy to the factual issues raised by the motions to dismiss;

(2) The information sought is protected by the accountant-client privilege;

(3) The information sought is protected by the attorney-client privilege; and

(4) A legal conclusion rather than a fact is sought.

■ Jurisdiction is alleged to be based upon diversity of citizenship. Therefore, the Maryland "long arm" statute, Art. 75, §§ 94–100, Md.Ann.Code (1969 Repl. Vol., as amended), is the statute under which personal jurisdiction of the defendants must be obtained. Haynes v. James H. Carr, Inc., 427 F.2d 700 (4th Cir. 1970), cert. denied, 400 U.S. 942, 91 S.

Ct. 238, 27 L.Ed.2d 245 (1970); Rule 4(e) F.R.Civ.P. The parties seem to agree that jurisdiction, if it exists, as to Time and the individual defendants is conferred by § 96(a) (3) and § 96(a) (4), Art. 75, Md.Ann.Code (1969 Repl. Vol., as amended). Said sections provide in pertinent part as follows:

"(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

\* \* \* \* \* \*

"(3) Causing tortious injury in this State by an act or omission in this State;

"(4) Causing tortious injury in this State or outside of this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from goods, food, services or manufactured products used or consumed in this State;"

\* \* \* \* \* \*

Section 96(b) of the "long arm" statute limits jurisdiction based solely upon § 96 to "\* \* \* a cause of action arising from acts enumerated in this section \* \* \*."

For the purposes of the jurisdictional argument only, Time has conceded that it engaged in a persistent course of conduct in the State of Maryland and that it intentionally induced a breach of contract by FPS. The individual defendants, Conway, Watters, and Ananian have conceded for the purpose of the jurisdictional argument only that they intentionally induced a breach of contract by FPS. Kingston, who is sued individually and as a general partner of the national accounting firm of Ernst & Ernst, has filed an affidavit in connection with his motion to dismiss in which he denies any contact with the claims of the plaintiffs in Maryland and denies that he has any substantial contact with Maryland in any other way.

The complaint alleges that FPS is a wholly owned subsidiary of Time. It

further alleges that Conway, Watters, and Ananian are employees or directors of FPS. Kingston is alleged to be a partner in the national accounting firm of Ernst & Ernst.

The validity of the objections to the interrogatories based on lack of relevancy depends upon an analysis of the jurisdictional argument raised by the motions to dismiss and upon the extent to which evidence as to jurisdictional facts should be received at this stage of this proceeding. The position generally of Time is that since it has conceded for the purposes of jurisdiction that it engages in a persistent course of conduct in Maryland, the only question remaining as far as it is concerned is whether or not "tortious injury" has occurred under either § 96(a) (3) or § 96(a) (4) of the Maryland "long arm" statute. Time further argues that although it has conceded for the purpose of jurisdiction that it intentionally induced FPS to breach its contract, there have been no specific factual allegations by the plaintiffs showing that the actions of Time were not privileged, the argument continuing that if the actions of Time were privileged they would not constitute the basis of a tort and hence could not cause "tortious injury" as required by §§ 96(a) (3) and (4). Watters, Conway, and Ananian make similar arguments although they have not conceded that they have performed any acts in this state nor engaged in any course of conduct in this state nor derived substantial revenue from goods, food, services or manufactured products used or consumed in this state.

■ ■ The burden of alleging and proving jurisdictional facts rests upon the plaintiff. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Haynes v. James H. Carr, Inc., *supra*; Malinow v. Eberly, 322 F.Supp. 594, 600 (D.Md. 1971). Ordinarily this burden must be met by the plaintiff prior to trial when the allegations of jurisdictional facts are contradicted or denied. Malinow v. Eberly, *supra*. See Rule 12(d) F.R.Civ.P.

As will be later developed in this opinion, however, this latter rule does not require a finding of jurisdictional fact by the court when the jurisdictional facts are essentially the same as the ultimate facts involved in the merits of the case. In view of the concessions previously noted, there are uncontradicted jurisdictional fact allegations, at least insofar as Time, Watters, Conway, and Ananian are concerned, that the contract was breached and that they intentionally breached it. The complaint alleges without contradiction that the plaintiffs were injured by the breach. Assuming then the existence of uncontradicted allegations of injury caused by an intentional inducement to a third party to breach a contract with the injured party and by a conspiracy to accomplish the breach, are there further factual allegations needed sufficiently to comply with the requirements of §§ 96(a) (3) and (4) as to "tortious injury" so as to withstand a motion to dismiss?

■ In Maryland, the torts of intentional inducement to breach of contract, Damazo v. Wahby, 259 Md. 627, 270 A.2d 814 (1970); Rinaldi v. Tana, 252 Md. 544, 250 A.2d 533 (1969); United Rental Equipment Co. v. Potts and Callahan, 231 Md. 552, 191 A.2d 570 (1963); Horn v. Seth, 201 Md. 589, 95 A.2d 312 (1953); Stannard v. McCool, 198 Md. 609, 84 A.2d 862 (1951); Cumberland Glass Mf'g Co. v. DeWitt, 120 Md. 381, 87 A. 927 (1913); Sumwalt Ice & Coal Co. v. Knickerbocker Ice Co., 114 Md. 403, 80 A. 408 (1911); Knickerbocker Ice Co. v. Gardiner Dairy Co., 107 Md. 556, 69 A. 405 (1908); and conspiracy to induce breach of contract, Damazo v. Wahby, *supra*; Edison Realty Co. v. Bauernschub, 191 Md. 451, 62 A.2d 354 (1948); Western Maryland Dairy v. Chenowith, 180 Md. 236, 23 A.2d 660 (1942), have long been recognized. The Maryland courts have held that the primary tort consists of the intentional inducement to a third party to breach a lawful contract without legal justification or excuse, Stannard v. McCool, *supra*, 198 Md. 617, 618, 84 A.2d 862 and

cases therein cited, resulting in injury to the plaintiff, Damazo v. Wahby, *supra,* 259 Md. 627, 638, 270 A.2d 814 and cases therein cited. The defendants, in their respective motions to dismiss, argue that the requirement that there be lack of "legal justification or excuse" is an essential element of either tort and that the plaintiffs must negative the existence of any legal justification or excuse for the actions of the defendants in order to establish the existence of "tortious injury" as required by §§ 96(a)(3) and (4) of the "long arm" statute. The question then becomes one of determining to what extent, if any, the plaintiffs are obliged to negative or disprove the existence of privilege on the part of the defendants.

Prosser, in his work on torts,[1] on page 942, states:

"... today it is generally agreed that an intentional interference with the existing contractual relations of another is prima facie sufficient for liability and that the burden of proving that it is 'justified' rests upon the defendant. Otherwise stated and perhaps more accurately, the defendant may show that the interference is privileged by reason of the interests furthered by his conduct but the burden rests on him to do so."

This view is in accord with the general weight of authority. Smith v. American Guild of Variety Artists, 349 F.2d 975 (8th Cir. 1965); Keene Lumber Co. v. Leventhal, 165 F.2d 815, 822 (1st Cir. 1948); Akron Milk Producers, Inc. v. Lawson Milk Co., 147 N.E.2d 512 (Ohio Com.Pl.1958). See Annot. 26 A.L.R.2d 1227, 1263–64 and 86 C.J.S. Torts § 57.

Felsen v. Sol Cafe Mfg. Corp., 24 N.Y.2d 682, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969), relied upon heavily by the defendants, does not necessarily disagree with the majority view. In that case the court reversed a judgment against the sole stockholder of a corporation which had terminated Felsen's employment contract. *Felsen v. Sol Cafe* was decided after a full trial on the merits and really involved a determination as to whether there was *any* evidence upon which the jury could have found the privilege not to exist under the facts of that case. A determination of whether the lack of privilege is an affirmative defense and upon whom falls the burden of proving or disproving its existence was not essential in the *Felsen* decision.

Irrespective of whether it is pursuasive authority for the proposition that the lack of privilege is an essential element of the cause of action which must be alleged and proved as part of the plaintiff's case, it is beyond dispute that *Felsen* does state that the privilege of a sole stockholder to induce its wholly owned subsidiary corporation to breach its contract is not an absolute one but depends upon a number of other circumstances. The privilege discussed in *Felsen* is the one outlined in § 769, Restatement, Torts where it is stated that one who has a financial interest in the business of another

"... is privileged purposely to cause him not to enter into or continue a relation with a third person in that business if the actor

(a) does not employ improper means, and

(b) acts to protect his interest from being prejudiced by the relation."

Comment "(d)" to § 769, however, states that the privilege does *not* apply to the tort of intentional inducement to breach of an existing contract as opposed to the tort of inducing a party not to enter into a contract or continue a non-contractual business relationship.

No cases have been found in which the Maryland appellate courts have expressed an opinion on the efficacy of Comment "(d)" to § 769. Generally, however, the recent Maryland cases have cited Restatement, Torts with approval without exception in regard to the tort of intentional inducement to breach of contract and those torts related to it.

1. Prosser on Torts (4th ed.).

See, *e. g.*, Horn v. Seth, *supra*, 201 Md. at 593, 95 A.2d 312; Stannard v. McCool, *supra*, 198 Md. at 617–618, 84 A.2d 862; United Rental Equipment Co. v. Potts and Callahan, *supra*, 231 Md. at 560, 191 A.2d 570; Rinaldi v. Tana, *supra*, 252 Md. at 545, 250 A.2d 533. The distinction between the tort of interference with a business relationship to which Comment "(d)" makes the privilege of § 769 solely applicable and the tort of intentional inducement to breach of an existing contract is well recognized in Maryland, Goldman v. Harford Road Bldg. Association, 150 Md. 677, 681–682, 133 A. 843 (1926). It might well be that the privilege of § 769 is not available in Maryland in a case, such as here, involving an *existing* contract, but it is not necessary to decide that question now.[2]

Assuming that the privilege exists in Maryland, this court believes that the existence of privilege in this type of case is an affirmative defense. See Cumberland Glass Mf'g Co. v. DeWitt, *supra*, 120 Md. at 394–395, 87 A. 927. If a plaintiff were strictly required to negative the myriad possible factual situations which could establish the existence of a privilege, much judicial time and energy would be wasted in contrast to the relatively more efficient system of limiting judicial consideration to precise factual conditions upon which the defendant affirmatively relies to establish privilege.

■ The uncontradicted and conceded allegations that Time, Conway, Watters, and Ananian intentionally induced the breach by FPS of its contract which allegedly resulted in injury to the plaintiffs is, therefore, a sufficient *prima facie* establishment of the existence of "tortious injury" to require the defendants affirmatively to raise their defense of justification or privilege. Leasco Data Processing Equipment Corp. v. Maxwell, 319 F.Supp. 1256 (S.D.N.Y.

1970) cited by the defendants, is distinguishable in that in *Leasco* the defendant by affidavit unequivocally denied any connection with the events in New York or elsewhere which were alleged to constitute the "tortious act[s]" giving rise to the cause of action. In the present case, Time, Conway, Watters, and Ananian have conceded for purposes of jurisdiction that they intentionally induced the breach of contract. Unicon Management Corp. v. Koppers Company, 250 F.Supp. 850 (S.D.N.Y.1966), involving the comparable section of the New York "long arm" statute to the Maryland § 96(a) (3), also is distinguishable because in *Unicon* the defendants had filed affidavits denying the basic jurisdictional facts whereas here Time, Conway, Watters, and Ananian have conceded the intentional inducement to breach of the contract. In *Unicon* also the court decided that a "bald allegation" that certain employees of Koppers who arguably did commit tortious acts in New York were acting as agents of the individual defendants, who also were Koppers employees, was insufficient in the face of the defendants' denials under oath to establish for jurisdictional purposes that the individual defendants had committed "tortious acts" in New York; however, in the instant case, the tortious acts of the defendants need not be committed in Maryland to give jurisdiction under § 96 (a) (4) nor is the question in this case whether the defendants vicariously through agents committed "tortious acts" since here the commission of the acts has been conceded for the purposes of the jurisdictional argument. Jurisdiction over Conway, Watters, and Ananian here is not predicated merely upon the fact of jurisdiction over FPS, their employer, *cf.* Wilshire Oil Co. of Texas v. Riffe, 409 F.2d 1277, 1281, n. 8 (10th Cir. 1969); Schenin v. Micro Copper Corp., 272 F.Supp. 523, 528–529 (S.D. N.Y.1967), but instead is sought to be

2. Cf. Damazo v. Wahby, 259 Md. 627, 270 A.2d 814 (1970), where the Court of Appeals of Maryland held that the sole stockholder of a corporation could be held liable for actual damages caused by his conspiring to induce the breach of a contract by his wholly owned corporation.

predicated upon the, as yet by them undenied, allegation that their own conceded acts of inducement to breach of contract were for a purpose other than the benefit of FPS.

In the majority of other jurisdictions, the defense of justification by a parent corporation to a charge that it induced a breach of contract by its wholly owned subsidiary is an affirmative one, and the defendant must at least establish *prima facie* that it acted in a good faith belief that its actions were required to protect its interest in the induced corporation and that it did not use illegal means to induce the breach of contract. Similarly, officers and directors of a corporation may have a defense of justification for inducing a breach of the corporate contract, but this justification is an affirmative defense to be raised by the defendant who must show at least *prima facie* that he acted in the good faith belief that he was furthering the interest of the corporation.[3] See, *e. g.*, W. P. Iverson & Co. v. Dunham Mfg. Co., 18 Ill.App.2d 404, 152 N.E.2d 615, 621–623 (1958); American Surety Co. v. Schottenbauer, 257 F.2d 6, 11–13 (8th Cir. 1958); Bender v. Hearst Corp., 263 F.2d 360, 368 (2d Cir. 1959); Kozlowsky v. Westminster Nat'l Bank, 6 Cal.App.3d 593, 86 Cal.Rptr. 52, 56 (1970); Griswold v. Heat Incorporated, 108 N.H. 119, 229 A.2d 183, 188 (1967); Aalfo Co. v. Kinney, 105 N.J.L. 345, 144 A. 715, 716 (1929); Mitchell v. Aldrich, 122 Vt. 19, 163 A.2d 833, 836–837 (1960); Mendelson v. Blatz Brewing Co., 9 Wis.2d 487, 101 N.W.2d 805, 807–808 (1960); Vassardakis v. Parish, 36 F.Supp. 1002, 1005–1006 (S.D.N.Y.1941); Owen v. Williams, 322 Mass. 356, 77 N.E.2d 318, 321 (1948); Nottingham v. Wrigley, 221 Ga. 386, 144 S.E.2d 749 (1965). *Contra*, Barlow v. Brunswick Corporation, 311 F. Supp. 209, 212 (E.D.Pa.1970), applying Pennsylvania law.

If, therefore, the plaintiffs have otherwise properly alleged a cause of action for the intentional inducement to breach of contract or a conspiracy to accomplish the same, it is incumbent upon the defendants at the very least to produce some evidence establishing their justification or privilege, if any, upon which they rely as a defense. The ultimate fact of whether or not "tortious injury" actually occurred may well depend upon whether all of the facts and circumstances establish a privilege in one or more of the defendants. The nature of the case requires that the facts necessary for the establishment of "tortious injury," as that term is used in the "long arm" statute, will affect simultaneously both the jurisdictional problem and the merits. It would seem inappropriate at this juncture for the court to determine facts establishing the existence of justification or lack thereof when that is one of the ultimate questions in the case. See Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). A contrary holding would logically require a mini trial solely for jurisdictional purposes in every tort case, where personal jurisdiction rested on §§ 96(a) (3) and (4) of the "long arm" statute, to determine whether a tort actually occurred. For instance in every assault case in which §§ 96(a) (3) or (4) were involved, a jurisdictional trial would be necessary to determine whether or not the defendant acted in self defense. This is clearly not required. What is required, where the jurisdictional facts are also facts affecting the merits, is only that the "tortious injury" which is the basis of the suit be alleged *prima facie* on the pleadings. The burden of later proving those jurisdictional facts, as well as the ultimate facts, at the trial will rest upon the plaintiff.

3. For present purposes, it is not necessary to decide whether the burden of proof of establishing the defense truly rests upon the defendant or whether the defendant must merely go forward with the evidence to show *prima facie* the defense once the plaintiff has established a *prima facie* case in which event the overall burden of proof would remain with the plaintiff.

McNutt v. General Motors Acceptance Corp., *supra*; Malinow v. Eberly, *supra*.[4]

■ For the reasons stated above, the court believes that the Rule 12(b) motions to dismiss do not require a factual determination to be made at this stage of the proceeding as to whether or not for jurisdictional purposes a "tortious injury" has occurred. Accordingly, any interrogatories of the plaintiffs directed to the defendants relating to the question of justification or privilege would not be relevant to a factual issue properly raised by the motions to dismiss. Since interrogatories 5, 6, 9, 21–36, 44–47, and 50–54 addressed to Time, FPS, Conway, Watters, and Ananian, and interrogatories 5, 6, 7, 25–36, 44–47, and 51–54 addressed to Kingston relate to the question of justification or privilege, to matters which have been conceded for purposes of the jurisdictional question, or to matters not within the scope of the court's order of September 7, 1971, the plaintiffs' motion to compel answers to those respective interrogatories is denied.

■ Interrogatories 63–67, addressed to Time, FPS, Watters, Conway, and Ananian conceivably could relate to an issue appropriately raised by the motions to dismiss, *i. e.*, the alternate requirement of § 96(a) (4) that the individual defendants Watters, Conway, and Ananian be found to derive " * * * substantial revenue from * * * services * * * used in this State." Although the factual situation here is not exactly that of Lawson v. Baltimore Paint and Chemical Corporation, 298 F.Supp. 373 (D.Md. 1969), in which foreign directors and officers were found to have derived substantial revenue from services performed outside of the state but utilized within the state, this court believes that the information sought could possibly, in conjunction with other information which the plaintiffs might have, be relevant to the issue of substantial revenue or lead to such relevant information. While the questions may present a borderline case, the court believes the philosophy of liberal discovery fostered by the Federal Rules tips the scales in favor of requiring them to be answered, and it is so ordered.

Interrogatories 63–67, addressed to Kingston, however, present a different problem. Kingston, an accountant, who presumably would have the information sought only by virtue of communications addressed to him or his firm in the course of his work in rendering a professional accounting service, has objected to the interrogatories on the ground that they seek the contents of communications privileged by the provisions of Art. 75A, § 21, Md.Ann.Code (1969 Repl. Vol., as amended). That statute provides that:

"Except by express permission of the person employing him, or of the heirs, personal representatives or successors of such person, a certified public accountant or public accountant or any person employed by him shall not be required to, and shall not voluntarily, disclose or divulge the contents of any communication made to him by any person employing him to examine, audit or report on any books, records, accounts or statements nor any information derived therefrom in rendering professional service; provided that nothing in this section shall be taken or construed as modifying, changing or affecting the criminal laws of this State or the bankruptcy laws."

■ In diversity cases the weight of authority is that a federal court should apply the law of privileged communica-

4. Generally, the application of "long arm" statutes involves two steps. First; it is necessary to decide whether the statute permits service of process on the nonresident defendant and, second, whether service under the statute violates the Due Process Clause of the Constitution of the United States. Haynes v. James H.

Carr, Inc., 427 F.2d 700, 703 (4th Cir. 1970), cert. denied, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970). The application of the Maryland "long arm" statute here has been discussed only insofar as necessary to decide the motion to compel answers to interrogatories.

tions which would be applied by the courts of the state in which it sits. Krizak v. W. C. Brooks & Sons, Incorporated, 320 F.2d 37 (4th Cir. 1963); Hill v Huddleston, 263 F.Supp. 108 (D.Md. 1967); Application of Cepeda, 233 F. Supp. 465 (S.D.N.Y.1964).

Judge Thomsen of this court in Hill v. Huddleston, *supra*, predicted that, where a deposition was sought to be taken in a different state from the one in which the main action was pending, the Maryland courts would adopt the rule that the court of the deposition state should apply the law of the state which has the most significant relationship with the communication. In that case Judge Thomsen found that Maryland had the most significant relationship with the communication and he applied the applicable Maryland statute relating to the privileged communication asserted.

In the present case, however, the communications in question were presumably made in New York, a state which does not have a statute establishing an accountant-client privilege. Under the common law no such privilege existed. People ex rel. Mooney v. Sheriff, 269 N.Y. 291, 199 N.E. 415 (1936). Would the Maryland courts, then, apply the New York law of nonrecognition of the accountant-client privilege in the face of the Maryland statute creating such a privilege? I think not, even though the communication could be said to have a more significant relationship with New York than with Maryland.

Comity between the states does not require the Maryland courts to enforce a law or policy of a sister state when such action would violate the public policy of Maryland. Henderson v. Henderson, 199 Md. 449, 87 A.2d 403 (1952).[5] The language of the Maryland statute creating the accountant-client privilege does not in terms apply only to communications made in the State of Maryland or only to communications otherwise having a significant relationship to Maryland; the language of the statute, on the contrary, purports to speak in absolute terms and prohibits the disclosure of *"any communication"* (emphasis supplied). The state's affirmative action in carving out in absolute terms a privilege creating an exception to the general rule of testimonial compulsion, in this court's view, constitutes the enunciation of a strong public policy in favor of the protection of accountant-client communications. To require the disclosure of the communications here would be violative of that public policy. See Palmer v. Fisher, 228 F.2d 603 (7th Cir. 1955), cert. denied, 351 U.S. 965, 76 S. Ct. 1030, 100 L.Ed. 1485 (1956). Application of Cepeda, *supra*. Accordingly, the motion to compel Kingston to answer interrogatories 63–67 will be denied, and it is so ordered.

In the court's view of the case as expressed above, it is not necessary to discuss the other reasons advanced by the defendants as objections to the various interrogatories.

5. But this rule is subject to exceptions. See 28 U.S.C. § 1738; Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951).