### Edward N. Brower v. Holmes Transportation, Inc.

[435 A.2d 952]

No. 338-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed September 1, 1981

*Michael F. Hanley of Black & Plante, Inc.,* White River Junction, for Plaintiff.

*Lawrence G. Slason* of *Salmon and Nostrand,* Bellows Falls, for Defendant.

Larrow, J. Plaintiff's complaint below sought damages for wrongful discharge, and an order directing defendant to honor a claimed oral employment contract. He was met with a motion for summary judgment, which the trial court granted, and he appeals that judgment.

A review of the record reveals no substantial conflict on the facts involved, so that determination of plaintiff's appeal presents only questions of law. Plaintiff had been employed as a union truck driver for over fifteen years at a Bellows Falls, Vermont, terminal. He lived in White River Junction. He had acquired significant seniority rights and other benefits, but wanted to work closer to home, so he applied for a job with Holmes Transportation, Inc. Holmes had the same union contract he had been working under. In mid-October, 1979, he was told by the Holmes terminal manager, one Barrows, that he could begin work October 29 as a "casual employee." Under the union contract, as plaintiff well knew, a casual employee fills in for vacations, "book-offs" and/or sickness. He acquires no seniority for a thirty-day period, and is employed only on a trial basis; during that period he "may be discharged without further recourse." He may, during that period, be dismissed without union protest, except when the dismissal is for the purpose of evading the agreement or discriminating against union members. No such claimed purpose is here involved.

Plaintiff gave notice to his previous employer. He began work with Holmes on October 29, a Monday. He worked four days, then was told by Barrows his services were no longer needed. Assigned as a reason was a previous back injury he had sustained, and a company policy against hiring drivers with such a history. The injury had been revealed on the application which he filed initially. The union declined to protest his discharge.

Plaintiff contends that a recovery is justified under the rules of estoppel, either *in pais* (equitable) or promissory. In the alternative, he suggests that the doctrine of *Jones* v. *Keogh,* 137 Vt. 562, 409 A.2d 581 (1979), is "unduly inflexible." That decision reiterated the rule of *Mullaney* v. *C. H.*

*Goss Co.,* 97 Vt. 82, 122 A. 430 (1923), that an employment contract at will may be terminated by either party, at any time, with or without cause. Again, we see no clear and compelling public policy justifying relaxation of that rule. Even *Monge* v. *Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974), cited for relaxation of the rule, requires that termination of the employment be motivated by bad faith, malice or retaliation. The malice involved in *Monge* was indeed slight, if existent at all, as then Justice Grimes pointed out in dissent. But it was accorded at least lip service as a requirement. And, aside from a routine prayer for exemplary damages, malice is neither asserted nor shown in the instant case. Plaintiff would not only have us adopt a public policy which in *Jones* we considered primarily a legislative concern, but he would have us do so in the face of an express contract provision that no cause for discharge is required. We decline to do so. Plaintiff cannot prevail on his suggested alternative.

 Nor can plaintiff justify recovery upon any theory of estoppel. He insinuates that he was offered permanent employment, and gave up his existing job in justified reliance upon such a promise. But he has failed, in our judgment, to raise a true factual issue on this point. Terminal manager Barrows, the other person involved in negotiations, specifically denied in his affidavit that he made any representations about hiring plaintiff on a permanent basis. Plaintiff in his deposition admitted there was no talk about a carrying over of seniority rights. And, when asked by interrogatory to state with particularity the basis of his claim of a promise of continued employment and reliance thereon, he answered merely that such promise was "implied in fact and implied in law." Under V.R.C.P. 56(e) this amounts only to reliance upon the pleadings, insufficient to meet factual denials. The promise which is the first essential element of promissory estoppel, *Overlock* v. *Central Vermont Public Service Corp.,* 126 Vt. 549, 553, 237 A.2d 356, 358–59 (1967), simply is not present in the instant case. Plaintiff knew that he was being hired as a casual employee subject to discharge without cause. What he really seeks is an *enlargement* of that promise, because his reliance upon it turned out less favorably than he expected. He has shown no factual basis for such enlargement, and

cannot prevail upon any theory of promissory estoppel. 1 S. Williston, Contracts §§ 139, 140 (3d ed. 1957).

 Reliance on estoppel *in pais,* or equitable estoppel, can serve plaintiff no better. In addition to reliance on a misleading misrepresentation, he must show ignorance of its falsity on his part. *Neverett* v. *Towne,* 121 Vt. 447, 457, 159 A.2d 345, 351 (1960). Reliance certainly appears; he quit his existing employment. But, as pointed out above, he has shown no representation that he would be hired on a permanent basis, without the thirty-day period in "casual" status. He knew what that status entailed. He admitted complete familiarity with the master contract. There is no showing that the terms and conditions of that contract were in any way misrepresented. And even had they been, his own familiarity with the terms would preclude justifiable reliance upon such representations. It is essential that such reliance be reasonable. *Caledonia Sand & Gravel Co.* v. *Campbell,* 128 Vt. 182, 185, 260 A.2d 221, 223–24 (1969); *McLaughlin* v. *Blake,* 120 Vt. 174, 180, 136 A.2d 492, 496 (1957). No factual basis for a finding of equitable estoppel appears.

 We are without guidance in the order below as to the reasons for the granting of the summary judgment. Nor does it appear why the assistant judges sat in a case where specific performance was requested. V.R.C.P. 83(1). But we are presented with no grounds for reversal. This case is clearly distinguishable from *Pockette* v. *LaDuke,* 139 Vt. 625, 432 A.2d 1191 (1981), where the assistant judges, sitting improperly, prevailed over the presiding judge. The authority of that case should be limited to situations where improper constitution of the court may have affected the eventual result. See *Maskell* v. *Beaulieu,* 140 Vt. 75, 435 A.2d 699 (1981). No such influence is indicated here, where only a legal ruling as to summary judgment is involved.

*Judgment affirmed.*